No. 24-60425

# In the United States Court of Appeals for the Fifth Circuit

State of Texas; Texas Commission on Environmental Quality,

*Petitioners*,

*v.*

United States Environmental Protection Agency; Michael S. Regan, Administrator, United States Environmental Protection Agency,

*Respondents.*

No. 24-60428

Business Coalition for Clean Air; Texas Oil & Gas Association; Texas Chemistry Council,

*Petitioners*,

*v.*

United States Environmental Protection Agency; Michael S. Regan, Administrator, United States Environmental Protection Agency,

*Respondents.*

On Petitions for Review of a Final Action
of the United States Environmental Protection Agency

**RECORD EXCERPTS FOR PETITIONERS**

(*Counsel Listed on Inside Cover*)

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Aaron L. Nielson
Solicitor General

William F. Cole
Deputy Solicitor General

Kateland R. Jackson
Assistant Solicitor General
Kateland.Jackson@oag.texas.gov

*Counsel for Petitioners
State of Texas and Texas Commission on
Environmental Quality*

Aaron M. Streett
Matthew L. Kuryla
Beau Carter
Baker Botts L.L.P.
910 Louisiana St.
Houston, Texas 77002
(713) 229-1855 (phone)
(713) 229-7855 (fax)
aaron.streett@bakerbotts.com

*Counsel for Business Coalition for Clean Air, Texas Oil & Gas Association, and Texas Chemistry Council*

**TABLE OF CONTENTS**

1. Clean Air Act Reclassification of the San Antonio, Dallas-Fort Worth, and Houston-Galveston-Brazoria Ozone Nonattainment Areas; TX, published at 89 Fed. Reg. 51,829 (June 20, 2024) ............................ Tab 1

**TAB 1: CLEAN AIR ACT RECLASSIFICATION OF THE SAN ANTONIO, DALLAS-FORT WORTH, AND HOUSTON-GALVESTON-BRAZORIA OZONE NONATTAINMENT AREAS; TX, PUBLISHED AT 89 FED. REG. 51,829 (JUNE 20, 2024)**

the Captain of the Port or designated representative. Designated representatives include commissioned, warrant, and petty officers of the U.S. Coast Guard.

Dated: June 4, 2024.

**Keith M. Donohue,**
*CAPT, U.S. Coast Guard, Captain of the Port, Sector Houston-Galveston.*

[FR Doc. 2024–13411 Filed 6–18–24; 8:45 am]

**BILLING CODE 9110–04–P**

---

**ENVIRONMENTAL PROTECTION AGENCY**

**40 CFR Part 81**

[EPA–R06–OAR–2023–0536; FRL–11640–02–R6]

**Clean Air Act Reclassification of the San Antonio, Dallas-Fort Worth, and Houston-Galveston-Brazoria Ozone Nonattainment Areas; TX**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY:** Pursuant to the Federal Clean Air Act (CAA), the Environmental Protection Agency (EPA) is granting a request from the Governor of the State of Texas to voluntarily reclassify the San Antonio, Dallas-Fort Worth (DFW), and Houston-Galveston-Brazoria (HGB) ozone nonattainment areas from Moderate to Serious for the 2015 ozone National Ambient Air Quality Standards (NAAQS). The EPA is also setting the date for the Texas Commission on Environmental Quality (TCEQ or State) to submit revised State Implementation Plans (SIPs) addressing the Serious ozone nonattainment area requirements and for the first transportation control demonstrations for these areas. The EPA is also setting the deadlines for implementation of new rules addressing Reasonably Available Control Technology (RACT) and for any new or revised Enhanced vehicle Inspection and Maintenance (I/M) programs. Finally, the TCEQ is no longer required to submit SIP revisions addressing the following requirements related to the prior classification level for these three ozone nonattainment areas: a demonstration of attainment by the prior attainment date; a Reasonably Available Control Measures (RACM) analysis tied to the prior attainment date; and contingency measures specifically related to the area's failure to attain by the prior attainment date.

**DATES:** This rule is effective on July 22, 2024.

**ADDRESSES:** The EPA has established a docket for this action under Docket ID EPA–R06–OAR–2023–0536. All documents in the docket are listed on the *https://www.regulations.gov* website. Although listed in the index, some information is not publicly available, *e.g.,* Confidential Business Information or other information whose disclosure is restricted by statute. Certain other material, such as copyrighted material, is not placed on the internet. Publicly available docket materials are available electronically through *https://www.regulations.gov.*

**FOR FURTHER INFORMATION CONTACT:** Ms. Carrie Paige, EPA Region 6 Office, Infrastructure and Ozone Section, 214–665–6521, *paige.carrie@epa.gov.* Please call or email the contact listed here if you need alternative access to material indexed but not provided in the docket.

**SUPPLEMENTARY INFORMATION:** Throughout this document ''we,'' ''us,'' and ''our'' means the EPA.

**I. Background**

The background for this action is discussed in detail in our January 26, 2024, proposal (89 FR 5145).[1] In that document, we proposed to grant a request submitted by Texas Governor Greg Abbott to reclassify the San Antonio, DFW, and HGB ozone nonattainment areas from Moderate to Serious for the 2015 ozone NAAQS. We also proposed a deadline for the TCEQ to submit revisions to the SIP addressing the Serious area requirements for these areas. The SIP requirements that apply specifically to Serious areas include: Enhanced monitoring (CAA section 182(c)(1)); Emissions inventory and emissions statement rule (40 CFR 51.1300(p) and 40 CFR 51.1315); Reasonable Further Progress (RFP) (40 CFR 51.1310); Attainment demonstration and RACM (40 CFR 51.1308 and 40 CFR 51.1312(c)); RACT (40 CFR 51.1312); Nonattainment New Source Review (NSR) (40 CFR 51.1314 and 40 CFR 51.165); Enhanced I/M (CAA section 182(c)(3) and 40 CFR 51 Subpart S); Clean-fuel vehicle programs (CAA section 182(c)(4));[2] and Contingency measures (CAA sections 172(c)(9) and 182(c)(9)). In addition, a demonstration evaluating the need for a transportation control measure program (CAA section 182(c)(5)) is also required. We also proposed and took comment on a range of deadlines for the TCEQ to submit revisions to the SIP addressing the Serious area requirements, from 12 to 18 months from the effective date of the EPA's final rule reclassifying the San Antonio, DFW, and HGB areas as Serious. We also proposed a deadline for implementation of new RACT rules as expeditiously as practicable but no later than January 1, 2026, and proposed a deadline for any new or revised Enhanced vehicle I/M programs (for areas that do not need I/M emission reductions for attainment or RFP SIP purposes) to be fully implemented as expeditiously as practicable but no later than four years after the effective date of EPA's final rule reclassifying these areas as Serious. We also proposed a deadline for the first transportation control demonstration to be submitted two years after the attainment demonstration due date.

The January 2024 proposal also outlined EPA's interpretation that following voluntary reclassification, a state is no longer required to submit certain SIP revisions addressing the following requirements related to the prior classification level for an ozone nonattainment area because they are tied to the prior (*i.e.,* Moderate) attainment date: (1) a demonstration of attainment by the prior attainment date, (2) a RACM analysis tied to the prior attainment date, and (3) contingency measures specifically related to the area's failure to attain by the prior attainment date. Accordingly, with this final voluntary reclassification of the San Antonio, DFW, and HGB areas as Serious for the 2015 ozone NAAQS, Texas is no longer required to submit these three identified SIP elements as they relate to the Moderate classification level, and EPA's October 18, 2023, Finding of Failure to Submit is moot as to these specific SIP elements for Texas.[3] However, as described in our January 2024 proposal, there remain several Moderate area SIP requirements that continue to be required after these areas are voluntarily reclassified as Serious because they are not dependent upon the Moderate attainment date itself.[4]

---

[1] Henceforth we refer to this proposal as the ''January 2024 proposal.'' The January 2024 proposal and related documents (*e.g.,* the Texas Governor's request and our Environmental Justice Considerations) are provided in the docket for this action.

[2] In June 2022, the EPA released new guidance that provides several options for states to either continue to rely upon their existing Clean Fuel Fleets Program, to add new components to these programs, or to rely on recent EPA regulations to satisfy the Clean Fuel Fleets requirement. This new guidance reaffirms and supplements the 1998 guidance with new compliance options. This guidance is posted at *https://www.epa.gov/state-and-local-transportation/clean-fuel-fleets-program-guidance.*

[3] 88 FR 71757 (October 18, 2023). Henceforth referred to as the ''October 2023 findings.''

[4] See 89 FR 5145, 5147.

The comment period for our January 2024 proposal closed on February 26, 2024. We received relevant comments during the comment period from eight sources: CPS Energy; Earthjustice—on behalf of Air Alliance Houston, Texas Environmental Justice Advocacy Services, and Sierra Club; Office of the Harris County Attorney; Texas Chemistry Council; TCEQ; Texas Oil & Gas Association; Texas Pipeline Association; and a member of the public. These comments are available for review in the docket for this rulemaking. Our responses to the comments are provided in Section II of this rulemaking.

## II. Response to Comments

*A. Reclassification of the Areas as Serious*

*Comment:* Commenters state that the EPA has no discretion to deny the reclassification request and the EPA should have issued a direct final approval granting the reclassification request.

*Response:* The EPA is granting the request to reclassify the San Antonio, DFW, and HGB nonattainment areas from Moderate to Serious for the 2015 ozone NAAQS, but we disagree that a direct final action is appropriate in this circumstance for several reasons. First, our January 2024 proposal proposed to determine that the EPA's October 2023 findings with respect to the Texas SIP revisions for the demonstration of attainment by the prior attainment date, the RACM analysis tied to the prior attainment date, and contingency measures specifically related to the area's failure to attain by the prior attainment date for the Moderate classification are now moot, and that the associated deadlines triggered by the October 2023 findings for imposition of sanctions or promulgation of a Federal Implementation Plan (FIP) no longer apply with respect to these three elements. Second, our January 2024 proposal requested comments on deadlines proposed for SIP submission and for implementation of certain CAA requirements, which we are required to establish pursuant to CAA section 182(i). Thus, the proposal provides the public an opportunity to review and comment upon the proposed actions and deadlines. Finally, we disagree that a direct final action is a required vehicle to grant the voluntary reclassification request. CAA section 181(b)(3) provides that the EPA "shall publish a notice in the **Federal Register** of any such request and of action by the Administrator granting the request" but does not dictate the form of such **Federal Register** action. Our action here is consistent with section 181(b)(3) and with a prior action granting the Texas Governor's request to reclassify the HGB area from Moderate to Severe for the 1997 ozone NAAQS, where we did not issue a direct final action but instead, used the same notice-and-comment format as we have here.[5]

*Comment:* The Office of the Harris County Attorney asks that EPA provide guidance on how it interprets CAA section 181(b)(3) in the event a governor requests a reclassification after a missed SIP deadline. The commenter contends that the Governor's reclassification request and the reasoning behind it is contrary to the intent of the CAA, which is not to protect industry and economy but the people living and breathing in Texas. The commenter states that the January 2024 proposal, if finalized, would give Texas several years to complete certain SIP requirements, and EPA has found some requirements pertaining to the prior attainment date to now be moot. The commenter states that this sets a precedent which may further delay ozone improvements, in contravention to the intent of the CAA. The commenter suggests clarifications on which requirements would be moot, deadlines, and other issues addressed in the January 2024 proposal would be helpful for both stakeholders and states when contemplating the consequences of such an action.

*Response:* CAA section 181(b)(3) does not require states to provide a reason for their request for a voluntary reclassification, nor does it condition EPA's action on the request on such reasoning. Consistent with 40 CFR 51.1303(b), "[a] state may request, and the Administrator must approve, a higher classification for an area *for any reason* in accordance with CAA section 181(b)(3)."[6] Reclassification is a legitimate method provided by the CAA to address the circumstances of the San Antonio, DFW, and HGB areas—as illustrated by the TCEQ's proposed Moderate attainment demonstration SIP revisions for these areas that indicated, based on the TCEQ's modeling and available data, these three areas were not expected to attain the 2015 ozone NAAQS by their 2024 attainment dates.[7]

We disagree that approving the request to reclassify the area from Moderate to Serious would delay implementation of the CAA SIP requirements in a manner inconsistent with the CAA. The commenter did not describe which ozone improvements would be delayed. Our January 2024 proposal did not propose delays for the Moderate or Serious area SIP submissions. As mentioned in our January 2024 proposal, upon reclassification, stationary air pollution sources in the San Antonio, DFW, and HGB ozone nonattainment areas will be subject to Serious ozone nonattainment area NSR and Title V permit requirements. The source applicability thresholds for major sources and major source modification emissions will be 50 tons per year (tpy) for volatile organic compounds (VOC) and oxides of nitrogen ($NO_X$). For new and modified major stationary sources subject to review under Texas Administrative Code Title 30, Chapter 116, Section 116.150 (30 TAC 116.150) in the EPA approved SIP,[8] VOC and $NO_X$ emission increases from the proposed construction of new or modified major stationary sources must be offset by emission reductions by a minimum offset ratio of 1.20 to 1 (see CAA section 182(c)(10)). We note that the DFW and HGB areas are classified as Severe under the 2008 ozone NAAQS and thus, the more stringent Severe area requirements are currently being implemented—and will continue to be implemented—in those areas.[9] Our January 2024 proposal listed the remaining Moderate area SIP requirements that continue to be required after these areas are reclassified as Serious, which are: (1) a 15 percent rate-of-progress (ROP) plan (40 CFR 51.1310), (2) contingency measures for failure to achieve RFP, including the 15 percent ROP requirement for Moderate areas (CAA sections 172(c)(9) and 182(c)(9)), (3) a RACT demonstration (40 CFR 51.1312), (4) Nonattainment New Source Review (NNSR) rules (40 CFR 51.165), and (5) a Basic I/M program (CAA section 182(b)(4) and 40 CFR 51 subpart S). Because these SIP requirements are not dependent upon the Moderate attainment date itself, voluntary reclassification does not

---

[5] 73 FR 56983 (October 1, 2008).

[6] Emphasis added.

[7] The proposed SIP revisions are posted on the TCEQ website at *https://www.tceq.texas.gov/airquality/sip.* Once there, click on the map for the DFW, HGB, and/or the San Antonio area, then scroll down and click on "Latest Ozone Planning Activities" and then scroll down to the "Proposed Moderate AD SIP Revision for the 2015 Ozone NAAQS."

[8] Specifically, we are referring to the EPA-approved Texas SIP at Section 116.150, titled "New Major Source or Major Modification in Ozone Nonattainment Area." 60 FR 49781 (September 27, 1995) and subsequent revisions at 77 FR 65119 (October 25, 2012).

[9] For Severe ozone nonattainment areas, the nonattainment NSR source applicability thresholds for major sources and major source modification emissions are 25 tpy for VOC and $NO_X$, and the minimum emissions offset ratio is 1.30 to 1 (see CAA sections 182(d) and 182(d)(2)).

change the submission requirement or implementation deadlines for these SIP elements that were due January 1, 2023, for the Moderate classification for the San Antonio, DFW, and HGB areas. Reclassifying the areas as Serious in response to a reclassification request does not result in an attainment date that is any later than the attainment date that would have applied had the area been initially classified as Serious, and the Serious requirements that depend on that date are all still applicable.

We disagree that approving the request to reclassify the area from Moderate to Serious would set a precedent that may further delay ozone improvements, as suggested by the commenter. We note that our approval of the prior Texas Governor's request to reclassify the HGB area from Moderate to Severe for the 1997 ozone NAAQS provided that once reclassified, the area would no longer be required to submit an attainment demonstration for the prior classification.[10] In our January 2024 proposal, we explained that once reclassified as Serious, these three areas have a new statutory attainment deadline, so certain SIP elements (in this case, specifically, the Moderate area attainment demonstration and the associated RACM and contingency measures for failure to attain) that are dependent on the Moderate attainment deadline are no longer applicable or required for the lower, superseded (in this case, Moderate) classification. None of the remaining SIP requirements for the Moderate classification and none of the SIP requirements for the Serious classification were proposed as moot or delayed in our January 2024 proposal. We also note that for the prior voluntary reclassification of the HGB area from Moderate to Severe for the 1997 ozone NAAQS, the HGB area was able to attain the 1997 ozone NAAQS by the end of 2014, significantly ahead of the area's June 15, 2019, attainment date.[11]

We elaborate on the Serious SIP submission and implementation deadlines in our responses to the comments that follow.

*B. Status of Certain Requirements of Previous Classification*

*Comment:* Commenters agree with EPA's determination that the attainment demonstration, RACM, and contingency measure elements for failure to attain for the Moderate level classification would no longer be due upon reclassification as Serious and that EPA's October 2023 findings should be mooted for these elements.

*Response:* The EPA appreciates these comments.

*Comment:* The commenter states that the EPA repeatedly reassured the TCEQ that voluntary reclassification would provide an extended timeframe to meet the CAA deadlines. The commenter states that the January 2024 proposal is inconsistent with those representations as the January 2024 proposal continues to hold Texas to the Moderate nonattainment area deadlines.

*Response:* We disagree that a voluntary reclassification provides the EPA with authority to extend existing deadlines associated with a prior nonattainment classification. The Moderate nonattainment SIP submission deadlines were established when the areas were reclassified from Marginal to Moderate and the TCEQ did not challenge the deadlines in that final action.[12] We note that the period of time between the effective date of reclassification and the area's attainment date could be greater for an area requesting a voluntary reclassification, since the effective date of reclassification would presumably occur earlier than for an area mandatorily reclassified following a Finding of Failure to Attain.[13] Thus, reclassification can have the practical effect of providing more time to develop and implement plans to meet an area's attainment date.

Our January 2024 proposal proposes to moot only the Moderate area attainment demonstration and associated RACM demonstration and contingency measures specifically tied to the Moderate attainment date. The remaining Moderate nonattainment SIP elements continue to be required and their associated deadlines are not otherwise altered.

*Comment:* Commenters state that the CAA is explicit that a state has authority to request voluntary reclassification, and therefore to moot all elements required under the prior classification. Commenters state that voluntary reclassification allows the state to delay elements required under the prior classification, because the purpose of the reclassification is to permit states to develop and implement the most effective collection of measures associated with the required elements to attain the NAAQS. Commenters state that CAA section 181(b)(3) affects the CAA's other provisions that are key to reclassification. Commenters state that when a state exercises its authority under CAA section 181(b)(3), the voluntary reclassification works on the CAA's other components and abrogates the need for submittals associated with the lower classification.

*Response:* The EPA disagrees. Commenters assert that voluntary reclassification to a higher classification exempts a state from needing to make a submittal for any SIP elements addressing the lower classification, but this assertion is inconsistent with the plain language of the statute. Specifically, CAA section 182(c) states that ''each State in which all or part of a Serious Area is located shall, with respect to the Serious Area . . . make the submissions described under subsection (b) of this section (relating to Moderate Areas) and shall also submit the revisions to the applicable implementation plan (including the plan items) described under this subsection.'' Thus, the CAA clearly requires that Serious areas meet Moderate area requirements in addition to Serious area requirements (*see* CAA section 182(c)). These Moderate area requirements apply to areas initially classified as Serious as well as areas reclassified as Serious, whether their reclassification as Serious is mandatory as a result of failure to attain or is voluntary in response to a reclassification request. The CAA does not otherwise provide for delaying Moderate area requirement deadlines beyond their prescribed timeframes, regardless of how the area came to become classified as Serious. What the voluntary reclassification does provide is additional lead time before the attainment date, as compared to a mandatory reclassification, for the state to adopt and implement such measures as necessary to attain while recognizing that the CAA requires that reasonable further progress as required for Moderate areas must still be achieved.

Our approach here is consistent with past actions to grant voluntary reclassifications. When Texas previously requested a voluntary reclassification for the HGB area from Moderate to Severe under the 1997 ozone NAAQS, we stated that, ''Texas has a continuing responsibility for certain elements of the Moderate area requirements. EPA has stated that reclassification does not provide a basis for extending submission deadlines for SIP elements unrelated to the attainment demonstration that were due for the area's Moderate classification.''[14] With the exception of the Moderate area attainment demonstration and the associated

---

[10] 73 FR 56983, 56987.
[11] See 73 FR 56983 and 80 FR 81466 (December 30, 2015).
[12] 87 FR 60897 (October 7, 2022).
[13] 73 FR 56983.
[14] 73 FR 56983, 56991.

RACM demonstration and contingency measures for failure to attain by the Moderate attainment date, the TCEQ has not been relieved of its obligation to comply with SIP submission deadlines for the Moderate area requirements.

*Comment:* Commenters disagree with EPA's assertion that RFP requirements are not tied to the attainment date and therefore cannot be mooted for the Moderate classification upon reclassification as Serious. Commenters state that EPA's assertion that RFP requirements are not tied to the attainment date runs counter to plain language in CAA section 182(b)(1)(A), which states: "Such plan shall provide for such specific annual reductions in emissions of volatile organic compounds [VOC] and oxides of nitrogen [$NO_X$] as necessary to attain the national primary ambient air quality standard for ozone *by the attainment date applicable under this chapter*" [emphasis added by commenters]; as well as CAA section 182(c)(2)(B), which states: "A demonstration that the plan, as revised, will result in VOC emissions reductions from the baseline emissions . . . *until the attainment date*" [emphasis added by commenters]. Commenters state that while an RFP SIP revision is not designed to demonstrate attainment, the timing of the emissions reduction targets for the Moderate RFP demonstration are based on the attainment deadline for that Moderate classification, and the Moderate RFP contingency measures would be required if an area fails to meet those RFP targets that are based on the Moderate attainment deadline. Commenters state that EPA's argument for superseding the attainment demonstration and RACM requirements is that "EPA interprets the CAA such that following reclassification, any required attainment demonstration and associated RACM analysis must be done with respect to the new and current applicable attainment date." Commenters state that this interpretation should also apply to RFP as a new demonstration would be required with targets based on the Serious classification attainment date. Commenters add that the targets based on the Moderate attainment date would also be demonstrated within the Serious classification RFP SIP revision using the most recent emissions development methods (*e.g.,* MOVES4); therefore, eliminating the need for the Moderate classification RFP submittal.

*Response:* Commenters' assertions that RFP is tied to the attainment date as they suggest is inconsistent with the RFP requirements established in the implementing regulations for the 2015 ozone NAAQS which are based on a long-held EPA interpretation of RFP for ozone nonattainment areas. As commenters note, Moderate and higher ozone nonattainment areas are subject to the general requirements for nonattainment plans in CAA subpart 1 and the specific requirements for ozone areas in CAA subpart 2, including the requirements related to RFP and attainment. This is consistent with the structure of the CAA as modified under the 1990 amendments, which introduced additional subparts to part D of title I of the CAA to address requirements for specific NAAQS pollutants, including ozone (subpart 2), carbon monoxide (subpart 3), particulate matter (subpart 4), and sulfur oxides, nitrogen dioxide, and lead (subpart 5).

These subparts apply tailored requirements for these pollutants, including those based on an area's designation and classification, in addition to and often in place of the generally applicable provisions retained in subpart 1. While CAA section 172(c)(2) of subpart 1 states only that nonattainment plans "shall require reasonable further progress," CAA sections 182(b)(1) and 182(c)(2)(B) of subpart 2 provide specific percent reduction targets for ozone nonattainment areas to meet the RFP requirement. Put another way, subpart 2 defines RFP for ozone nonattainment areas by specifying the incremental amount of emissions reduction required by set dates for those areas.[15] For Moderate ozone nonattainment areas, CAA section 182(b)(1) defines RFP by setting a specific 15 percent VOC reduction requirement over the first six years of the plan. The 15 percent reduction is "the base program that all moderate and above areas must meet. This base program is necessary to ensure actual progress toward attainment in the face of uncertainties inherent with SIP planning." [16]

For Serious or higher ozone nonattainment areas, the 15 percent requirement still applies, and section 182(c)(2)(B) further requires specific annual percent reductions for the period following the first six-year period and allows averaging over a three-year period. With respect to the 1-hour ozone NAAQS, the EPA stated that, by meeting the specific percent reduction requirements in CAA sections 182(b)(1) and 182(c)(2)(B), the state will also satisfy the general RFP requirements of section 172(c)(2) for the time period discussed.[17]

The EPA has adapted the RFP requirements under the CAA to implement the three 8-hour ozone NAAQS that have been promulgated since the 1990 CAA Amendments. In the "Phase 2" SIP Requirements Rule for the 1997 Ozone NAAQS (Phase 2 rule),[18] the EPA adapted the RFP requirements of CAA sections 172(c)(2) and 182(b)(1) to require plans to provide for the minimum required percent reductions and, for certain Moderate areas, to provide for the reductions as necessary for attainment. See, *e.g.,* 40 CFR 51.910(a)(1)(ii)(A) and (b)(2)(ii)(C).

In 2015, the EPA replaced the regulations promulgated through the Phase 2 rule with the regulations promulgated through the 2008 Ozone SIP Requirements Rule (SRR).[19] In the 2008 Ozone SRR, the EPA established RFP requirements for the 2008 ozone NAAQS that are similar, in most respects, to those in the Phase 2 rule for the 1997 ozone NAAQS but that do not define RFP for certain Moderate areas in terms of the reductions needed for attainment.[20] More explicitly, in the 2008 Ozone SRR, the EPA defined RFP as meaning both the "emissions reductions required under CAA section 172(c)(2) *which the EPA interprets to be an average 3 percent per year emissions reductions of either VOC or $NO_X$* and CAA sections 182(c)(2)(B) and (c)(2)(C) and the 15 percent reductions over the first six years of the plan and the following three percent per year average under 40 CFR 51.1110." [21] Thus, under the 2008 Ozone SRR, the RFP emissions reductions required for Serious or higher ozone nonattainment areas under CAA section 172(c)(2) are based on a set annual percentage found in the CAA, not on the specific attainment needs for the area. In this regard, EPA has been even more explicit in our SRR for the

---

[15] CAA section 171(1) defines RFP as "such annual incremental reductions in emissions of the relevant air pollutant as are required by this part or may reasonably be required by the Administrator for the purpose of ensuring attainment of the applicable national ambient air quality standard by the applicable date." The words "this part" in the statutory definition of RFP refer to part D of title I of the CAA, which contains the general requirements in subpart 1 and the pollutant-specific requirements in subparts 2–5 (including the ozone-specific RFP requirements in CAA sections 182(b)(1) and 182(c)(2)(B) for Serious areas).

[16] 57 FR 13498, 13507 (April 16, 1992).

[17] See 57 FR 13498, at 13510 (for Moderate areas) and at 13518 (for Serious areas).

[18] See 70 FR 71612 (November 29, 2005).

[19] 80 FR 12264. Under 40 CFR 51.919 and 51.1119, the regulations promulgated in the 2008 Ozone SRR replaced the regulations promulgated in the Phase 2 rule, with certain exceptions not relevant here.

[20] Compare RFP requirements for the 1997 ozone NAAQS at 40 CFR 51.910(a)(1)(ii)(A) and (b)(2)(ii)(C) with the analogous provisions for the 2008 ozone NAAQS at 40 CFR 51.1110(a)(2)(i)(B).

[21] See 40 CFR 51.1100(t) (emphasis added).

2015 ozone NAAQS: [22] ''Reasonable further progress (RFP) means the emissions reductions required under CAA sections 172(c)(2), 182(c)(2)(B), 182(c)(2)(C), and 40 CFR 51.1310. The EPA interprets RFP under CAA section 172(c)(2) to be an average 3 percent per year emissions reduction of either VOC or $NO_X$.'' [23]

In the SRR for the 2015 Ozone NAAQS, which is the set of regulations that governs the EPA's action here, RFP is defined in terms of percent reduction from the area's emissions in the baseline year, not in terms of the reductions necessary for attainment. In other words, for the 2015 ozone NAAQS, the requirement to demonstrate RFP is independent of the requirement to demonstrate attainment by the attainment date. RFP for the 2015 ozone NAAQS represents the minimum progress that is required under the CAA, and our regulations, and does not necessarily need to provide for the reductions necessary to achieve attainment of the ozone NAAQS by the attainment date, which could vary largely from one nonattainment area to another. For all of these reasons, EPA disagrees with commenter's claim that RFP should be treated the same as the Moderate area attainment demonstration, RACM, and contingency measures for failure to attain. EPA's explanation for why those three particular SIP elements are no longer required following a voluntary reclassification does not apply to the Moderate area RFP SIP element. Unlike the other three SIP elements, RFP is not ''tied to the applicable attainment deadline'' as explained above.

Moreover, the SRR for the 2015 ozone NAAQS lists RFP and ROP as distinct provisions for implementation. See 40 CFR 51.1300(l), 51.1300(m), 51.1310(a)(2)(i) and 51.1310(a)(4)(i). These provisions clearly demonstrate the necessity for RFP reductions during the first 6 years of the plan, regardless of the area's initial classification, or whether it was Moderate before reclassifying as Serious, whether voluntarily, or mandatorily. EPA therefore disagrees with the commenter's implicit suggestion that the Moderate area RFP SIP submittal should be delayed until submitted within the Serious area RFP SIP submittal, as that would further delay submission of the Moderate RFP plans, which are addressed in our October 2023 findings. The Moderate RFP SIP submittal was due to EPA on January 1, 2023, and the State will also be required to provide an RFP SIP submittal for the Serious classification by January 1, 2026. Considering the reasoning above explaining that the State is still required to provide an RFP demonstration for the Moderate classification, and the undisputed fact that the area is required to demonstrate RFP for this time period, the EPA is not convinced by the commenter that further delay of the RFP demonstration is warranted.

*Comment:* Commenters state that the EPA's proposal to require Texas to continue to meet Moderate RFP and contingency measure obligations does not align with EPA's rationale in its Clean Data Policy (40 CFR 51.1318), which provides that elements related to the attainment date, including RFP and contingency measure obligations, are eligible for suspension if the area is meeting the NAAQS. Commenters state that the EPA has not identified a rationale for treating the nature of these elements differently in the context of voluntary reclassification.

*Response:* Commenters misunderstand the purpose of the Clean Data Policy, which states, ''[u]pon a determination by the EPA that an area designated nonattainment for a specific ozone NAAQS has attained that NAAQS, the requirements for such area to submit attainment demonstrations and associated RACM, RFP plans, contingency measures for failure to attain or make reasonable progress, and other planning SIPs related to attainment of the ozone NAAQS for which the determination has been made, shall be suspended until such time as the area is redesignated to attainment for that NAAQS, at which time the requirements no longer apply; or the EPA determines that the area has violated that NAAQS, at which time the area is again required to submit such plans.'' (40 CFR 51.1318). The rationale for treatment of RFP in the Clean Data Policy is different from the rationale used here for reclassification. While the Clean Data Policy is reasonably based on the fact that an area that is attaining the NAAQS need not make further progress toward attainment in the form of RFP reductions, it does not follow that an area that is not attaining the NAAQS would be relieved of the need to make CAA-mandated progress toward attainment as a result of it being reclassified and given a later attainment date.

The DFW, HGB, and San Antonio areas currently are not meeting the 2015 ozone NAAQS, and thus the Clean Data Policy does not apply here. Moreover, as areas not meeting the standard, these areas must continue achieving emission reduction progress as required by the CAA and EPA's regulations.

*Comment:* A commenter disagrees that RACT requirements are not tied to the attainment date and therefore cannot be mooted for the Moderate classification upon reclassification as Serious. Commenters cite to CAA section 182(b)(2)(A) that states must consider each category of VOC sources in the area covered by a control techniques guideline (CTG) document issued by the Administrator between November 15, 1990, and the date of attainment, and thus the statutory connection of the RACT review to the attainment date is clear. Commenters state that the EPA clearly bases RACT requirements on the attainment deadline for an area's classification as evidenced by this action in which EPA is proposing RACT implementation deadlines based on the timing required to influence attainment of the standard by the attainment date. Commenters state that the RACT connection to the attainment date is also evident through the connection with the classification level itself, as the RACT analysis is grounded in the review of the applicable major stationary source threshold. Commenters state that the reclassification as Serious would result in more stringent application of RACT requirements to the nonattainment areas under a major source threshold of 50 tpy, which would capture major sources under the 100 tpy Moderate classification threshold, thus eliminating the need for a submittal to address Moderate classification RACT.

*Response:* The EPA disagrees. For reclassified areas, the RACT requirements at 40 CFR 51.1312(a)(2)(ii) and (3)(ii) obligate a state to conduct a new, individual RACT analysis for the new classification and implement any identified measures as necessary. Reclassification does not relieve the RACT obligation for the prior classification. As stated in our January 2024 proposal, the CAA requirement in section 182(b)(2) to implement RACT for specified categories of sources is implemented and assessed based on whether the RACT rules are implementing what is economically and technologically feasible and is not based on reductions needed to attain by the attainment deadline (89 FR at 5147).

We disagree that CAA section 182(b)(2)(A) provides a statutory connection of RACT to the attainment date. Section 182(b)(2)(A) states that RACT requirements apply to each category of sources covered by a CTG document issued by the Administrator between November 15, 1990, ''and the date of attainment.'' This language

---

[22] See 83 FR 62998 (December 6, 2018).
[23] See 40 CFR 51.1300(l).

establishes the sources covered by the RACT analysis that a Moderate or higher area must consider. The reference to the attainment date sets an outer bound of what CTGs will define the categories of sources that fall under the Moderate RACT requirement. It does not tie the substantive RACT analysis, and the level of controls required by application of RACT, to the attainment date.

We also disagree that the stationary source threshold set by the classification level evidences a connection between RACT and the attainment date. Just as 182(b)(2)(A) defines the categories of sources that need to be covered by a RACT assessment so too the stationary source threshold associated with a classification level defines the sources that need to be covered in the state's RACT assessment. The stationary source threshold establishes the emission levels where RACT would be applied but does not define the substance or content of the RACT analysis. In this case, the prior Moderate classification required evaluation of any sources in any category subject to a CTG and any non-CTG sources with a potential to emit more than 100 tpy of NOx or VOCs. The commenter is correct in that the new Serious classification means the State needs to address RACT for additional sources, namely non-CTG sources with a potential to emit 50 tpy or more of NOx. But the commenter has failed to explain why this fact, that RACT must be analyzed and implemented for additional smaller sources, should result in delayed submission and implementation of RACT on the original set of sources covered by the Moderate classification. If EPA were to go with such an interpretation, it would delay the requirement in this instance for Texas to submit a SIP addressing the RACT obligation from January 1, 2023, to January 1, 2026, in an area that is not attaining the 2015 ozone NAAQS. This would lead to a three-year delay in required controls in areas that have air quality that exceeds levels protective of human health and the environment. The commenter has not identified any language in the CAA that necessitates or even supports such a result.

Finally, the commenters point to the fact that EPA has based RACT implementation deadlines on the timing required to influence attainment of the standard by the attainment date. This is a correct characterization of EPA's action, but also does not inevitably lead to an interpretation that required SIP revisions and RACT implementation should be delayed by three years following an area's reclassification. As explained at proposal and elsewhere in this action, the substantive analysis required in a RACT SIP, namely the implementation of controls that are economically and technologically feasible, does not hinge on what level of control is needed for the area's attainment by the attainment date (this is in contrast to, *e.g.,* the analysis required for RACM). A state's RACT SIP should be based on, and EPA will review it for, imposition of reasonably available control technology, even if that imposition of reasonably available control technology is not nearly enough to get the area to attainment by the attainment date. At the same time, it is also true that implementation of RACT-level control should aid, at least in part, in getting an area to attainment by the attainment date. It defies logic to have an area's attainment date be in 2027, but for EPA to require a SIP revision requiring RACT level controls not due until 2028. Accordingly, both of these things can be true: that RACT is not a requirement directly tied to attainment while also requiring that RACT SIPs be due and RACT-level controls be implemented in time to matter for the overall efforts to get an area to attainment.

*Comment:* Commenters state that while vehicle I/M and nonattainment new source review (NNSR) elements are not explicitly tied to the attainment date for a classification, as with the other elements, the Serious classification would supersede these requirements with more stringent requirements. Commenters repeat that the evident legislative goal of the CAA, Part D, Subpart 2 requirements for the ozone NAAQS clearly indicate that reclassification to more stringent requirements subsume the less stringent requirements. Commenters add that in cases where elements are often satisfied with the submittal of certification statements noting that the requirements have already been addressed, commonly used for addressing I/M and NNSR requirements, it is illogical to hold areas under a finding of failure to submit for elements that have already been submitted and approved under previous classifications or standards. Commenters state that submittal of a certification statement is not legally necessary for EPA to know that an element, upon which EPA has already acted and approved, has been addressed, as EPA's SIP approval actions legally stand on their own merit. Commenters state that EPA's treatment of those elements as ''not submitted'' is legally insufficient to support a finding of failure to submit that results in sanctions and FIP clocks. Commenters add that the infrastructure SIP submittal requirements for each NAAQS already provide certification from the state that existing regulations are adequate to meet the applicable nonattainment area planning requirements.

*Response:* The EPA disagrees. Our January 2024 proposal did not propose to relieve the Basic I/M and Moderate NNSR requirements for the DFW, HGB, and San Antonio Moderate nonattainment areas. The Moderate nonattainment SIP submission deadlines, including the Basic I/M and Moderate NNSR requirements for the DFW, HGB, and San Antonio nonattainment areas, were established when the areas were reclassified from Marginal to Moderate and those deadlines were not challenged.[24] Our January 2024 proposal only proposed to relieve the Moderate area attainment demonstration and associated RACM demonstration and contingency measures specifically tied to the Moderate attainment date. The remaining Moderate nonattainment plan SIP deadlines, including I/M and NNSR, are not otherwise altered. We do not believe that the specific control requirements of the prior classification can or should be relieved because an area has been reclassified. More stringent NNSR and I/M are required because the area is subject to Serious requirements and in this final action, EPA is establishing submission and implementation deadlines for these new requirements but not relieving the requirements that should be implemented on the schedule set in the reclassification from Marginal to Moderate.

While our October 2023 findings are outside the scope of this action, the EPA disagrees that SIP certification statements triggered by a reclassification are redundant and already accomplished through other SIP processes, including approved SIP submissions under prior classifications or NAAQS. We continue to interpret the specific nonattainment planning requirements of CAA section 182 to require a state to provide a SIP submission to meet each nonattainment area planning requirement for a revised ozone NAAQS.[25] To the extent that commenters suggest the EPA should adopt a general presumption of adequacy for previously approved SIP elements, we disagree. The submission of individual nonattainment SIP elements for purposes of a reclassified area provides the public and the EPA an

---

[24] 87 FR 60897.
[25] See 83 FR 10376 (March 9, 2018) and 40 CFR 51.1302.

opportunity to review and comment upon each element of a nonattainment SIP. If the air agency reviews an existing SIP element and concludes it does not need to be revised in light of the reclassification, submission of a certification SIP allows the public to review the air agency's assessment and provide comment on any changes they may think necessary. The EPA then also has an opportunity to review the air agency's assessment and ensure that it is consistent with CAA requirements in relation to the reclassified area. The certification statement option is intended to streamline the SIP submission process, providing air agencies with the flexibility to address multiple SIP elements in a single certification statement, and combine the SIP certification action with other actions subject to public notice and comment. The EPA does not believe that developing and submitting certification SIP elements will be a significant and unnecessary drain on state resources. We also note with regard to the I/M programs, as discussed in 40 CFR 51 Subpart S, the vehicle fleet can change and impact whether the program continues to meet the required performance standard.

We disagree that the Texas infrastructure SIP submittal provides certification that existing regulations are adequate to meet the applicable nonattainment area planning requirements (CAA section 110(a)(2)(I)). The Texas infrastructure submittal for the 2015 ozone NAAQS did not address CAA section 110(a)(2)(I).[26] The infrastructure SIP submission is triggered by a NAAQS revision and provides the public and the EPA an opportunity to review the basic structure of a state's air quality management program. It is not intended—nor can it be presumed—to address the adequacy of individual nonattainment SIP elements for purposes of the revised NAAQS.

*Comment:* Commenters state that the EPA's January 2024 proposal notes that "changing the submission requirement or implementation deadlines for these [Moderate attainment area] elements would delay the implementation of these measures beyond what the CAA intended." Commenters claim however that, like the attainment demonstration and RACM, all Moderate classification requirements would be superseded with more stringent requirements under the Serious classification, which eliminates the need for submittals to cover less stringent requirements with deadlines that have already passed to meet attainment dates that would no longer apply. Commenters state that the EPA must give legal effect to all parts of the statute—not just the parts it prefers. Commenters state that requiring the state to submit and have EPA act on these superseded Moderate classification elements would make no logical or practical sense.

*Response:* The EPA disagrees. As noted in our January 2024 proposal, the attainment demonstration with respect to the Moderate attainment date, the RACM analysis with respect to the Moderate attainment date, and contingency measures for failure to attain by the Moderate attainment date are all dependent on the Moderate attainment date. Once voluntarily reclassified, the area no longer has a Moderate attainment date. However, the other Moderate area requirements remain in place, even as the state works to implement the requirements of the higher classification. The Moderate nonattainment SIP submission deadlines, including the requirements for the DFW, HGB, and San Antonio Moderate areas, were established when the areas were reclassified from Marginal to Moderate—those deadlines were not challenged and they stand as finalized.[27] As noted earlier, comments addressing the Moderate nonattainment area submissions, with the exception of the Moderate attainment demonstration and the associated RACM and contingency measures for failure to attain by the Moderate attainment date, are outside the scope of this action.

While the EPA agrees that it must give legal effect to all parts of the statute, the CAA requirements for nonattainment areas are cumulative, adding more stringent requirements with each higher classification and building on the requirements of the lower classifications, and the EPA disagrees that this building of requirements always results in the lower classification requirements being superseded. As noted earlier, pursuant to CAA section 182(c), "each State in which all or part of a Serious Area is located shall, with respect to the Serious Area . . . make the submissions described under subsection (b) of this section (relating to Moderate Areas) and shall also submit the revisions to the applicable implementation plan (including the plan items) described under this subsection." Except for elements specifically related to the attainment date, which are superseded by a voluntary reclassification, the higher classification requirements are added to the lower classification requirements. For example, although the Serious area major source threshold is more stringent than it is for a Moderate area, this does not supersede the NSR requirements for any source covered under the Moderate threshold. Instead, NSR requirements for smaller sources under the Serious threshold are *in addition to* those for sources covered under the Moderate threshold.

Our approach here is consistent with past actions to grant voluntary reclassifications. When Texas previously requested a voluntary reclassification for the HGB area from Moderate to Severe under the 1997 ozone NAAQS, we noted that, "Texas has a continuing responsibility for certain elements of the Moderate area requirements. EPA has stated that reclassification does not provide a basis for extending submission deadlines for SIP elements unrelated to the attainment demonstration that were due for the area's Moderate classification."[28] We subsequently approved the HGB RFP for the Moderate nonattainment area for the 1997 ozone NAAQS.[29] We maintain that Texas has not been released from its CAA obligations to comply with SIP submission deadlines for other Moderate area requirements not related to the attainment demonstration.

*Comment:* The commenter states that, as an alternative to all Moderate classification requirements being mooted, the Moderate classification RFP contingency measure element could be mooted for areas where RFP targets have been met and requests clarification on how to demonstrate this element is no longer required. The commenter also cites 85 FR 40026, a proposed reclassification action in which EPA proposed to determine that contingency measures for RFP were no longer necessary for the prior Moderate classification nonattainment plan because the state had adequately demonstrated that the applicable quantitative milestones under the Moderate plan had been met.[30] The commenter states that if it can demonstrate that the RFP targets have been met for the San Antonio, DFW, and HGB Moderate nonattainment areas, the requirement to submit RFP contingency

---

[26] 84 FR 49663 (September 23, 2019). The Texas submission for this infrastructure action is posted in the docket at *www.regulations.gov* and the docket ID is EPA–R06–OAR–2018–0673.

[27] 87 FR 60897.

[28] 73 FR 56983, 56991 (October 1, 2008).

[29] 74 FR 18298 (April 22, 2009).

[30] See "Approval and Promulgation of Implementation Plans; Designation of Areas for Air Quality Planning Purposes; California; South Coast Moderate Area Plan and Reclassification as Serious Nonattainment for the 2012 PM$_{2.5}$ NAAQS." 85 FR 40026, 40048–40049 (July 2, 2020).

measures would be unnecessary. The commenter states that since the milestone compliance demonstration is not required for the Moderate areas, the TCEQ requests clarification regarding the appropriate mechanism to demonstrate that the Moderate RFP targets have been met.

*Response:* The EPA acknowledges that in certain unideal situations, where the state has demonstrated that an RFP milestone has actually been met and where EPA has determined that demonstration to be adequate, the question of whether the state has adequate contingency measures for failure to meet RFP with respect to that milestone can be moot. This situation is unideal because the CAA is not designed to operate this way with respect to timing, and these situations typically arise because the state is overdue for submitting approvable contingency measures. Under normal CAA timelines, the contingency measures submittal and EPA approval should occur before the RFP milestone arrives so that the contingency measures could be triggered if the area failed to meet RFP. States should not delay submittal of required contingency submittals in the hopes that they may become moot at a later time. Such an approach contravenes the statutory timelines established by the CAA, and the intent of the contingency measures requirement. If this situation arises and the RFP milestone is not met, the CAA requires implementation of contingency measures without further action by the state or EPA. That requirement cannot be met on time if the contingency measures submittal is delayed.

For these reasons, EPA made a finding of failure to submit for contingency measures triggered by failure to meet RFP for the Moderate ozone nonattainment areas at issue here (and other elements) in October 2023. That finding started sanctions and FIP clocks that are still running because these (and other elements) are still outstanding. With this voluntary reclassification, EPA also urges the timely submittal of all required elements for the Serious classification, including contingency measures for all Serious RFP milestones and for failure to attain by the Serious area attainment date.

Under unusual circumstances in which EPA determines the Moderate area RFP reduction target was met before the state makes its overdue submittal to satisfy the requirement for Moderate contingency measures for failure to meet RFP, the EPA believes that no submittal of contingency measures for Moderate area RFP would be necessary. We acknowledge the EPA took a similar position within a PM$_{2.5}$ action cited by the commenter and believe the same logic could apply here.

This situation is also somewhat similar to EPA's prior disapproval of contingency measures in Texas for the 2008 Ozone NAAQS where we stated that, "EPA agrees with TCEQ that there is no longer a need for contingency measures triggered by failure to meet RFP for the DFW and HGB Serious nonattainment plan for purposes of the 2008 8-hour ozone NAAQS, because these areas met RFP for this specific classification. However, contingency measures are still required for the failure to attain (and indeed, noting the fact that areas failed to attain, should already have taken effect)."[31] There, the contingency measures were not needed for failure to meet RFP because EPA had previously determined that the area had met RFP, but contingency measures were still needed for failure to attain. But here, as explained previously, with this voluntary reclassification there will be no possibility of failure to attain by the Moderate area attainment date, and so the voluntary reclassification negates the need for contingency measures for failure to attain for the Moderate classification. Further, an RFP demonstration that EPA determined to be adequate would in this case negate the need to submit the Moderate contingency measures for failure to meet RFP, thus resulting in mooting the Moderate area contingency measures requirement entirely. Note, however, that the first Serious area RFP milestone is December 31, 2026, so a timely Serious area contingency measures submittal by January 1, 2026, is necessary to ensure that contingency measures are in place before the milestone occurs.

Finally, in response to the commenter's inquiry as to the appropriate mechanism for demonstrating that the Moderate RFP emission reduction targets have been met, the EPA notes that it does not have specific guidance or rules for this. Section 182(g) of the CAA does not require a milestone compliance demonstration (MCD) for Moderate areas. EPA expects that the process would work similar to that for PM (40 CFR 51.1013(b)) or for other MCDs for ozone (40 CFR 51.1310(c)(2)), where the state would provide to the EPA Regional Administrator a formal demonstration (*e.g.,* from the Governor or designee) showing the basis for establishing that RFP was met. The contingency measures SIP submittal requirement for failure to meet RFP would not be mooted unless and until EPA formally responds with a determination that it is adequate. EPA encourages the state to work with the Regional Office to discuss the demonstration process further.

*Comment:* The TCEQ states that the EPA should allow states flexibility in meeting RFP requirements, especially in areas where states can demonstrate that required reductions would not advance attainment. The TCEQ states that RFP requirements for areas classified as Moderate nonattainment for the 2015 ozone NAAQS are incredibly challenging to meet due to the significant reductions in ozone precursor emissions since 1990. The TCEQ states that as moderate classification RFP targets will still need to be demonstrated for the Bexar County nonattainment area under the Serious classification, EPA should allow states to substitute NO$_X$ emissions reductions in place of the 15 percent reduction in VOC required for initially designated Moderate ozone nonattainment areas when NO$_X$ emissions reductions are demonstrated to be at least as effective at reducing ozone concentrations. The TCEQ states that it recognizes that the CAA mandates the 15 percent VOC emissions reductions, but preliminary TCEQ photochemical modeling indicates that VOC reductions will not advance attainment of the 2015 ozone NAAQS in Bexar County. The TCEQ states that instead, this modeling indicates NO$_X$ emissions reductions will be more effective at reducing ozone concentrations in Bexar County. The TCEQ states that in Bexar County, point sources account for less than 5 percent of the total anthropogenic VOC emissions, and that area sources (including emissions from consumer products) account for about 70 percent of anthropogenic VOC emissions. The TCEQ states that the EPA should not require states to develop regulations that are ineffective at reducing ozone, economically penalizing to consumers, difficult to enforce, and unlikely to achieve the required reductions. The TCEQ states that allowing states flexibility in this sphere (and others discussed herein) will further the CAA's cooperative federalism framework, ensure proper respect for the states' role in fulfilling their CAA obligations, and result in better outcomes consistent with the aims of the CAA.

*Response:* We appreciate these comments and recognize the challenges that meeting the 15 percent VOC emissions reduction requirement can pose for newly designated ozone nonattainment areas. The EPA is working on this issue with several states to identify approaches that would be

---

[31] 87 FR 67957 (October 3, 2023).

allowable under the Clean Air Act including under CAA section 182(b)(1)(A)(ii), which specifically provides that a state may use a percentage less than 15 percent by adopting certain requirements.

*Comment:* Commenter states that the TCEQ submitted SIP revisions to EPA addressing Basic I/M for the San Antonio Moderate nonattainment area on December 18, 2023.

*Response:* The EPA agrees and will act on the SIP submissions for Basic I/M for the San Antonio area in a separate rulemaking action.

*Comment:* Commenters state that the EPA must require RACM to be adopted for the DFW, HGB, and San Antonio Moderate nonattainment areas. Commenters mention that courts have deferred to EPA's decisions tying RACM to the statutory attainment deadlines and state that EPA has ''authority to change its approach to RACM, so long as it ''displays awareness that it is changing position, provides a reasoned explanation for the change, and is also cognizant of reliance interests on the agency's prior policy.'' [32]

*Response:* We appreciate the information provided by the commenters. The EPA disagrees that RACM is required in this circumstance for the DFW, HGB, and San Antonio Moderate nonattainment areas. EPA has long interpreted the CAA requirement for ozone nonattainment areas to assess and implement reasonably available control measures to mean that states need to analyze and implement measures that advance an ozone area's attainment, and a measure is not RACM if it would not advance the attainment date (57 FR 13498, 13560).[33] As the commenters note, this interpretation has been upheld by federal courts. See *Sierra Club* v. *EPA,* 294 F.3d 155 (D.C. Cir. 2002) and *Sierra Club* v. *United States EPA,* 314 F.3d 735 (5th Cir. 2002). In developing a SIP revision pursuant to the RACM requirement, a state must consider all potentially available measures to determine whether they are reasonably available for implementation in the area, and whether they would advance the area's attainment date. The state may reject any measures as not RACM if they would not advance the attainment date, would cause substantial widespread and long-term adverse impacts, or would be economically or technologically infeasible. *Sierra Club* v. *EPA* at 162–163 (D.C. Cir. 2002); *Sierra Club* v. *EPA,* 314 F.3d 735 (5th Cir. 2002); *BCCA Appeal Group* v. *EPA,* 355 F.3d 817 (5th Cir. 2003). Following reclassification as Serious, to demonstrate measures that advance attainment of the ozone standard the emission reductions from the measures must occur no later than the start of the 2015 ozone NAAQS attainment season—*i.e.,* by January 1, 2026 (for the HGB area) and by March 1, 2026 (for the DFW and San Antonio areas). Because the relevant attainment date for such an analysis will be the Serious area attainment date, we believe it is appropriate to conclude that a demonstration of RACM with respect to the Moderate area attainment date no longer has meaning.

We acknowledge and support the commenters' claim that the EPA has authority to change our approach to RACM, ''so long as we display awareness that we are changing position, provide a reasoned explanation for the change, and are also cognizant of reliance interests on the agency's prior policy.'' However, EPA is not changing its historical interpretation of the RACM requirement in this action, as outlined in our final rule for implementation of the 2015 ozone NAAQS, which retains our existing general RACM requirements [34] and our reclassification of areas classified as Marginal for the 2015 ozone NAAQS does not address any change in our approach to RACM.[35]

*Comment:* Commenters provide examples of RACM that could be quickly implemented in the DFW, HGB, and San Antonio nonattainment areas.

*Response:* The EPA appreciates the information and examples provided. Following reclassification, such measures must be considered as Texas undertakes the required RACM analysis for the newly reclassified Serious areas, and Texas must evaluate these measures for their potential to advance the attainment date ahead of the otherwise applicable Serious date.

*Comment:* Commenters state that reclassification as Serious does not change the submission requirement or implementation deadlines for these five SIP elements that were due January 1, 2023, for the DFW, HGB, and San Antonio Moderate nonattainment areas: (1) a 15 percent rate-of-progress (''ROP'') plan, (2) contingency measures for failure to achieve RFP, including the 15 percent ROP requirement for Moderate areas, (3) a RACT demonstration, (4) NNSR rules; and (5) a Basic I/M program.

*Response:* The EPA agrees.

*C. Required Plans, and Submissions and Implementation Deadlines*

1. Serious Area Plan Requirements

Our January 2024 proposal did not propose any changes to the Serious area plan requirements but instead listed the SIP requirements that apply specifically to Serious areas, consistent with CAA sections 172(c) and 182(c), and 40 CFR 51 Subpart CC.[36] We received no comments addressing the Serious area plan requirements. Therefore, we are finalizing the Serious area plan requirements as proposed and such plan requirements are listed in Section III of this final action.

2. Submission Deadline for the San Antonio, DFW, and HGB Area SIPs for the 2015 Ozone NAAQS

We invited comments on a range of deadlines, from 12 to 18 months from the effective date of reclassification, for submission of the revised SIPs for the San Antonio, DFW, and HGB Serious nonattainment areas.

*Comment:* Commenters provide a wide range of recommendations, including ''as expeditiously as possible'' and that the SIP submission deadline be set at 12 months. Commenters also state that the 12-month SIP deadline based on CAA section 179(d) has no relevance to the current circumstance. Commenters state that a SIP deadline of 18 months or longer is consistent with CAA section 110(k)(5), allowing the EPA to establish reasonable deadlines. Commenters also state that the EPA should finalize a SIP submission deadline of 18 months or January 1, 2026, whichever is later.

One commenter (the TCEQ) urged the EPA to set a submittal deadline of at least 18 months from the effective date of reclassification, but no sooner than January 1, 2026. The TCEQ provided justification, citing the substantial amount of time to conduct modeling, evaluate controls, develop attainment plans, and conduct rulemaking while allowing affected sources sufficient time to implement control requirements. The TCEQ added that significant resources are required to address each of the three reclassified Serious nonattainment areas and expressed concern that an expedited SIP submittal deadline would reduce the time needed to prepare and submit approvable SIPs. The TCEQ also expressed the desire to incorporate on-road and non-road emission inventories

---

[32] Commenter referenced *Encino Motorcars, LLC* v. *Navarro,* 579 U.S. 211, 221–22 (2016); *FCC* v. *Fox Television Stations, Inc.,* 556 U.S. 502, 515 (2009).

[33] See also EPA's ''Guidance on the Reasonably Available Control Measures (RACM) Requirement and Attainment Demonstration Submissions for Ozone Nonattainment Areas,'' John S. Seitz, Director, Office of Air Quality Planning and Standards, November 30, 1999.

[34] 83 FR 62998, 63007 and 40 CFR 51.1312(c).

[35] 87 FR 60897.

[36] 89 FR 5145, 5148.

in the Serious SIP revisions using the newly released version of the Motor Vehicle Emission Simulator (MOVES4) model, which would require significant work to develop inventories for multiple years and areas.

*Response:* The EPA notes that the proposal pointed to CAA sections 179(d) and 110(k)(5) as examples of statutory provisions establishing timeframes for states to revise SIPs in instances where SIPs had been insufficient to result in an area's attainment by the attainment date and where SIPs had been identified as substantially inadequate to attain the NAAQS (among other things). To the extent that the commenter is asserting these provisions do not directly apply to the three areas being voluntarily reclassified, we agree. But we do not agree that the timing considerations of those provisions have no relevance to informing EPA's consideration and establishment of the SIP submission deadlines contemplated here. Here, as in the situation contemplated by CAA section 179(d), the areas in question would fail to timely attain by the Moderate area attainment date, absent the state's voluntary request to reclassify as Serious. Here, as in the situation contemplated by CAA section 110(k)(5), the state's SIPs have been inadequate to attain the NAAQS. So, while we agree that these provisions do not directly apply because EPA has not made the requisite findings to trigger those provisions, the Act's imposition of a 12-month clock, or an outer limit of no more than 18 months, for states to submit revisions addressing these conditions are informative of the appropriate timeframe to apply to these areas under these circumstances. It was therefore reasonable for EPA to propose a range of statutory timeframes for the SIP submission deadline that were in part informed by the relevant, though not directly applicable, statutory situations presented in CAA sections 179(d) and 110(k)(5).

We appreciate the information provided by the TCEQ. We are finalizing a SIP submission deadline of 18 months from the effective date of this action or January 1, 2026, whichever is earlier. As noted in the proposal, the 2026 ozone season, which in some areas begins on January 1, 2026, is the last ozone season that can impact air quality before the areas' attainment dates in 2027. We note that commenter's request that we establish a SIP submission deadline of "no sooner than January 1, 2026" appears to acknowledge the significance of that date with respect to the statutory and regulatory constraints on SIP submittal deadlines and implementation. Per EPA's 2015 ozone SRR, and as discussed below, states must implement RACT no later than the beginning of the ozone season of the attainment year, see 40 CFR 51.1312(a)(3), and it is appropriate to establish SIP deadlines no later than when the control measures in those SIPs are required to be implemented.[37] As discussed in the proposal, EPA's action establishing deadlines is informed by CAA section 182(i), which governs the adjustment of SIP revision deadlines following a mandatory reclassification for failure to timely attain by the attainment date. That provision instructs that the Administrator may adjust deadlines for meeting requirements associated with the reclassification, "to the extent such adjustment is necessary and appropriate to assure consistency among the required submissions." CAA section 182(i). Given that the beginning of the attainment year ozone season for some of these areas is January 1, 2026 (and for the other two it is March 1) we are setting the maximum SIP submission deadline as no later than January 1, 2026, in order to assure consistency among all of the state's submissions.

We are finalizing this more extended timeframe for submitting the Serious area requirements (as opposed to 12 months, which was also contemplated in the proposal), because we acknowledge, as raised by the commenter, the complexity in developing and implementing effective emission reductions for the areas, and the opportunity a longer timeframe provides for more robust attainment demonstration plans that include the newer MOVES modeling. Developing and implementing effective emission reductions for these areas is complex due to the complex coastal meteorology and large industrial area in the HGB area, and the large urban and growing populations in all three areas. With a SIP submission deadline of 18 months from the effective date of this action but no later than January 1, 2026, we believe the TCEQ will be able to use the best information available in its Serious SIP submissions, while ensuring that SIP elements requiring control measures needed for attainment are submitted no later than when those controls are required to be implemented.

3. Implementation Deadline for RACT

*Comment:* A commenter states that there is no way for RACT to be implemented sooner, or more expeditiously, than the latest date required by the CAA. Commenters state that the EPA should set implementation deadlines for RACT by area instead of imposing one blanket deadline. Commenters state that the EPA has inappropriately proposed the same RACT implementation deadline (*i.e.,* January 1, 2026) for all three areas without considering the circumstances of each area. Commenters state that the different ozone seasons, historic frequency of ozone exceedances, emission sources, and timelines for emission control compliance support different implementation deadlines. Commenters state that the ozone season for the HGB nonattainment area begins on January 1, but the ozone season for the DFW and San Antonio nonattainment areas begins on March 1. Commenters state that implementing RACT at the start of the ozone season would not likely influence the design values as most of the highest ozone observations occur in May or later for all three areas. Commenters provide, as an example, "the HGB area has not measured an eight-hour ozone concentration greater than 70 ppb before March 1 for over 10 years so the requirement for RACT implementation by January 1, 2026, would not benefit the area's design value." Commenters state that advancing attainment of the area is not a factor of consideration when evaluating RACT and therefore, it is not imperative that RACT be implemented by no later than the beginning of the attainment year ozone season; and it is inadequate support for requiring RACT implementation dates to be uniform for all nonattainment areas.

Commenters state that the EPA should finalize RACT implementation deadlines to allow affected entities to comply with RACT on a timeline that considers sources' ability to control emissions based on technological and economic feasibility, which are primary factors in determining RACT. Commenters state that the ability to control could vary between sources, source categories, and areas, particularly for Bexar County, and additional time may be needed to allow affected sources to comply with new rules. Commenters state that compliance may necessitate that affected sources purchase, install, test, and operate new equipment or control devices, and even if new

---

[37] 40 CFR 51.1312(a)(2)(ii) states that the SIP revision deadline for a RACT SIP required pursuant to a reclassification is either 24 months from the effective date of the reclassification action, or the deadline established by the Administrator in the reclassification action. In this case, given that a SIP revision deadline of 24 months from the effective date of reclassification would be *after* the deadline for RACT implementation, we are establishing a deadline in this reclassification action.

regulations only require affected sources to replace higher VOC-content materials with lower VOC-content materials, owners and operators would still need time to address existing stocks, find suppliers, and order new supplies.

*Response:* We appreciate these comments. Texas is now required to submit SIP revisions to implement RACT level controls for all three nonattainment areas now classified as Serious, which includes a lower Serious area source threshold of a potential to emit 50 tpy or more down from the Moderate area level of 100 tpy.

RACT-level controls should already be largely implemented in the DFW and HGB areas for sources within the Serious area source threshold, as these two areas were reclassified from Moderate to Serious for the 2008 ozone NAAQS, effective September 23, 2019, and the required RACT implementation deadlines were August 3, 2020, and July 20, 2021.[38] Any delays in implementing the more stringent requirements associated with reclassification would delay related air quality improvements and human health benefits for residents across these areas, including those that may already bear a disproportionate burden of pollution, as shown in the Environmental Justice (EJ) considerations referenced in our January 2024 proposal and included in the docket for this action.

We appreciate the TCEQ's comments addressing eight-hour ozone concentrations greater than 70 ppb before March 1 in the HGB area. We reviewed the State's data for the San Antonio, DFW, and HGB areas for January and February, from 2013 through 2024, and did not see any regulatory monitors with concentrations over 70 ppb.[39] However, consistent with our January 2024 proposal and the EPA's implementing regulations for the 2015 ozone NAAQS, for RACT required pursuant to reclassification, for the HGB area we are finalizing the Serious RACT implementation deadline to be as expeditiously as practicable, but no later than the start of the attainment year ozone season associated with the area's new attainment deadline, which is January 1, 2026.[40] For the DFW area, consistent with our January 2024 proposal and the EPA's implementing regulations for the 2015 ozone NAAQS, for RACT required pursuant to reclassification we are finalizing the Serious RACT implementation deadline to be as expeditiously as practicable, but no later than the start of the attainment year ozone season associated with the area's new attainment deadline, which is March 1, 2026.[41]

We appreciate the TCEQ's concerns regarding RACT in Bexar County. However, the implementation deadline for the Moderate area RACT was January 1, 2023, and by this time, implementation of RACT for the Moderate area should already be underway in the San Antonio area. Accordingly, most sources should already be under RACT controls for the Moderate classification and this voluntary reclassification as Serious will add those sources emitting less than 100 tpy that have the potential to emit 50 tpy or more. In addition, and as noted earlier, delays in implementing the more stringent requirements associated with reclassification would delay related air quality improvements and human health benefits for residents across the San Antonio nonattainment area, including those that may already bear a disproportionate burden of pollution, as shown in the EJ considerations referenced in our January 2024 proposal and included in the docket for this action. Therefore, consistent with our January 2024 proposal and the EPA's implementing regulations for the 2015 ozone NAAQS, for RACT required pursuant to reclassification we are finalizing the Serious RACT implementation deadline to be as expeditiously as practicable, but no later than the start of the attainment year ozone season associated with the area's new attainment deadline, which is March 1, 2026.[42]

4. Implementation Deadline for Enhanced I/M Programs

*Comment:* The Office of the Harris County Attorney states that vehicle emissions in Harris County are especially important in tackling ozone because the area's vehicle emissions will likely increase in the next several years as heavy traffic and population increase. The commenter believes a three-year deadline is reasonable and more appropriate than the proposed four-year deadline.

*Response:* We appreciate the commenter's concerns. The HGB (which includes Harris County), as well as the DFW, Serious ozone nonattainment areas are currently implementing Enhanced I/M pursuant to the requirements for the 2008 ozone NAAQS.[43] However, as described in our January 2024 proposal and consistent with the I/M regulations, for the existing Enhanced I/M programs in these areas, the TCEQ would need to conduct and submit a performance standard [44] modeling (PSM) analysis [45] as well as make any necessary program revisions as part of the Serious area I/M SIP submissions to ensure that I/M programs are operating at or above the Enhanced I/M performance standard level for the 2015 ozone NAAQS.[46] The TCEQ may determine through the PSM analysis that an existing SIP-approved program would meet the Enhanced performance standard for purposes of the 2015 ozone NAAQS without modification. In this case, the TCEQ could submit an I/M SIP revision with the associated performance modeling and a written statement certifying their determination in lieu of submitting new revised regulations.[47] To this end, the TCEQ included a PSM analysis for the existing Enhanced I/M program in Appendix C of the SIP revisions, proposed by the State on May 31, 2023, for the DFW and HGB Moderate attainment demonstrations for the 2015 ozone NAAQS.[48] The EPA will address these SIP revisions in a separate future action after the TCEQ has finalized the proposed I/M SIP revisions and submitted them to the EPA for consideration.

We also discussed in our January 2024 proposal that if the State wishes to rely upon emission reductions from any revisions to its I/M programs in SIPs demonstrating attainment or RFP, the State would need to fully implement these I/M program revisions as expeditiously as practicable but no later than the beginning of the applicable

---

[38] See 84 FR 44238 (August 23, 2019). The implementation deadline for RACT measures tied to attainment was August 3, 2020, and the implementation deadline for RACT measures not tied to attainment was July 20, 2021.

[39] *https://www.tceq.texas.gov/cgi-bin/compliance/monops/8hr_monthly.pl*

[40] See 40 CFR 51.1312(a)(3)(ii).

[41] Ibid.

[42] Ibid.

[43] See 88 FR 61971 (September 8, 2023).

[44] An I/M performance standard is a collection of program design elements which defines a benchmark program to which a state's proposed program is compared in terms of its potential to reduce emissions of the ozone precursors, VOC, and $NO_X$.

[45] See *Performance Standard Modeling for New and Existing Vehicle Inspection and Maintenance (I/M) Programs Using the MOVES Mobile Source Emissions Model* (October 2022, EPA–420–B–22–034) at *https://nepis.epa.gov/Exe/ZyPDF.cgi?Dockey=P1015S5C.pdf*.

[46] 40 CFR 51.372(a)(2).

[47] See *Implementation of the 2015 National Ambient Air Quality Standards for Ozone: Nonattainment Area Classifications and State Implementation Plan Requirements,* 83 FR 62998, 63001–63002 (December 6, 2018). Performance standard modeling is also required for Enhanced I/M programs in Serious and above ozone nonattainment areas for the 2015 ozone NAAQS.

[48] The DFW proposed SIP revision is identified as Project No. 2022–021–SIP–NR and the HGB proposed SIP revision is identified as Project No. 2022–022–SIP–NR. The Texas proposed SIP revisions are posted at *https://www.tceq.texas.gov/airquality/sip/Hottop.html*.

attainment year, *i.e.,* January 1, 2026 for the HGB area and March 1, 2026 for the DFW and San Antonio areas. However, the EPA has long taken the position that, like VOC RACT, the statutory requirement for states to implement I/M in ozone nonattainment areas classified Moderate and higher generally exists independently from the attainment planning requirements for such areas.[49] Thus, EPA believes that if the emission reductions from any I/M program revisions are not relied upon to demonstrate attainment by the attainment deadline or towards RFP for the 2015 ozone NAAQS, then an implementation deadline of no more than four years after the effective date of reclassification is reasonable given the unique nature of I/M programs and the many challenges, tasks, and milestones that must be met in implementing an Enhanced I/M program.

Furthermore, giving up to a four-year timeframe to implement Enhanced I/M in reclassified Serious nonattainment areas (that do not rely upon emission reductions from the new or revised Enhanced I/M programs for attainment demonstration or RFP SIP purposes) is consistent with the no more than four-year I/M implementation period established in the recent final rule that reclassified Marginal nonattainment areas to Moderate for the 2015 ozone NAAQS (which triggered requirements for Basic I/M programs).[50] Therefore, the EPA is finalizing its proposed deadline, that any new or revised Enhanced I/M programs, not intending to rely upon emission reductions from the new or revised Enhanced I/M programs for attainment demonstration or RFP SIP purposes, are to be fully implemented as expeditiously as practicable but no later than four years after the effective date of this final action.

*Comment:* The commenter disagrees that it is necessary to establish a January 1, 2026, implementation date for the Enhanced I/M program under the Serious classification in order to use the emissions reductions toward meeting Serious area attainment demonstration and RFP SIP obligations. The commenter states that the EPA has not provided a rationale for why newly required Enhanced I/M programs for the 2015 ozone standard would have to be fully implemented by no later than January 1, 2026, the beginning of the Serious classification attainment year. The commenter contends that if emissions reductions from implementation of an Enhanced I/M program can be used for meeting SIP requirements under the Serious classification, the reductions can be based on when the program starts within the attainment year. The commenter states that emissions reductions from I/M programs are variable, depending on the number of vehicles tested in any given month, the vehicles' emissions profiles, and state of repair.

*Response:* We appreciate these comments. However, as mentioned in our proposal and the SRR for the 2015 ozone NAAQS, all control measures in the attainment plan and demonstration must be implemented no later than the beginning of the attainment year ozone season, notwithstanding any alternate RACT and/or RACM implementation deadline requirements in 40 CFR 51.1312 (see 40 CFR 51.1308(d) and 83 FR 62998). Therefore, for those areas intending to rely upon emissions reductions from any revisions to its I/M programs for the Serious attainment demonstration or RFP SIP purposes, it is necessary to establish an I/M implementation deadline of no later than the start of the attainment year ozone season.

The EPA is finalizing its proposed deadline, that any new or revised Enhanced I/M programs, intending to rely upon emission reductions from the new or revised Enhanced I/M programs for attainment demonstration or RFP SIP purposes, are to be fully implemented as expeditiously as practicable but no later than January 1, 2026 (for the HGB area) and March 1, 2026 (for the DFW and San Antonio areas).

5. Reporting Deadline for the Transportation Control Demonstration

We received no comments addressing the reporting deadline for the transportation control demonstration. Therefore, consistent with our proposal and CAA section 182(c)(5), the first transportation control demonstration is due no later than January 1, 2028, which is two years after the attainment demonstration SIP is due, and subsequent transportation control demonstrations are due every three years thereafter.

Environmental Justice

*Comment:* The Office of the Harris County Attorney states that EPA provides an analysis of the HGB area's environmental justice (EJ) considerations in the proposed rule and notes that analyzing Harris County and its population with the inclusion of two other counties might not be the most accurate or effective way of understanding the EJ issues in Harris County. The commenter states that Harris County is geographically larger than Rhode Island, has a population larger than several states, is the third largest county in the United States, and has a sizable income gap. The commenter states that Harris County contains urban, suburban, and rural populations and does not have zoning laws, so commercial and industrial areas are often sited within or near residential areas, and consequently, neighborhoods in Harris County experience ozone pollution and EJ factors in different degrees. The commenter states that EPA noted this discrepancy in denying Texas's request for a 1-year extension of the attainment date for the HGB area for the 2008 ozone NAAQS—EPA based its denial, in part, on ''considerations of existing pollution burdens for some communities within the area.''[51] The commenter states that EPA noted communities residing and working near violating ozone monitors in the Houston area and the Houston Ship Channel are exposed *to a significant and disproportionate burden of ozone pollution and other sources of pollution (e.g., vehicle traffic and particulate matter emissions) compared to the greater Houston area* and the U.S. as a whole.[52] The commenter asks the EPA to factor this disparity between populations in Harris County into future EJ analysis in actions concerning Harris County.

*Response:* The EPA appreciates these comments.

*Comment:* Commenters state that the EPA's analysis failed to identify that EJScreen indicators in Bexar County exceed the 80th percentile for particulate matter and ozone pollution, although a graph provided in the docket did so.[53] Commenters state that this information does not change the result, but it is essential that EPA accurately identify environmental justice issues.

*Response:* The EPA appreciates these comments.

D. General

*Comment:* The TCEQ states that the EPA should conduct rulemaking to establish requirements for approvable contingency measures or, in the absence of rulemaking, finalize and respond to the comments submitted on the March 2023 draft guidance on contingency measure requirements. Commenters

---

[49] John S. Seitz, Memo, ''Reasonable Further Progress, Attainment Demonstration, and Related Requirements for Ozone Nonattainment Areas Meeting the Ozone National Ambient Air Quality Standard,'' May 10, 1995, at 4.
[50] See 87 FR 60897.
[51] 87 FR 60926, 60927 (October 7, 2022).
[52] Ibid, page 60929. Emphasis added by the commenter.
[53] See ''Environmental Justice Considerations'' in the docket for this action.

state that finalization of this guidance is necessary for the TCEQ to meet the deadlines required for SIP development related to this reclassification action and to develop effective measures that EPA may find approvable.

*Response:* The EPA acknowledges this comment. Our draft guidance serves as a useful interim statement of EPA policy that can inform States' contingency measures SIP development. As to the necessity or desirability of EPA conducting a rulemaking or finalizing guidance, or the timing thereof, these comments are outside the scope of this action. With respect to TCEQ's concerns about developing approvable contingency measures for the Serious attainment plan in the absence of finalized guidance, EPA staff is available to assist the TCEQ in the development and implementation of approvable contingency measures that are consistent with the statute and relevant court decisions.

*Comment:* Commenters state that it is not logical to run a sanctions clock for deadlines that have already passed and will be reset based on a higher classification. Commenters state that the EPA should terminate all sanctions clocks associated with its October 2023 findings. Other commenters state that the EPA should move forward with FIPs under the October 2023 findings.

*Response:* The EPA did not propose sanctions in our January 2024 proposal. Comments addressing our October 2023 findings are outside the scope of this action. However, as discussed in detail elsewhere in this final action, all Moderate area requirements remain in effect with the exception of the Moderate attainment demonstration, contingency measures associated with failure to attain by the Moderate attainment date, and RACM associated with the Moderate area attainment date.

*Comment:* Commenters state that the EPA is well within its authority to direct for any judicial review of final action to the D.C. Circuit.

*Response:* The EPA appreciates these comments.

### III. Final Action

Pursuant to CAA section 181(b)(3), we are granting the Texas Governor's request to voluntarily reclassify the San Antonio, DFW, and HGB nonattainment areas from Moderate to Serious for the 2015 ozone NAAQS. The EPA is also finalizing a deadline of 18 months from the effective date of this action or January 1, 2026, whichever is earlier, for the TCEQ to submit SIP revisions addressing the CAA Serious ozone nonattainment area requirements for the San Antonio, DFW, and HGB areas. The Serious area requirements include Enhanced monitoring (CAA section 182(c)(1)); Emissions inventory and emissions statement rule (40 CFR 51.1300(p) and 40 CFR 51.1315); RFP (40 CFR 51.1310); Attainment demonstration and RACM (40 CFR 51.1308 and 40 CFR 51.1312(c)); RACT (40 CFR 51.1312); Nonattainment NSR (40 CFR 51.1314 and 40 CFR 51.165); Enhanced I/M (CAA section 182(c)(3) and 40 CFR 51 Subpart S); Clean-fuel vehicle programs (CAA section 182(c)(4); and Contingency measures (CAA sections 172(c)(9) and 182(c)(9)). In addition, a demonstration evaluating the need for a transportation control measure program (CAA section 182(c)(5)) is also required. We are also finalizing deadlines for implementation of new RACT controls: in the HGB area, implementation shall occur as expeditiously as practicable but no later than January 1, 2026, and in the San Antonio and DFW areas implementation shall occur as expeditiously as practicable but no later than March 1, 2026. We are also finalizing a deadline for any new or revised Enhanced I/M programs in the HGB area to be fully implemented as expeditiously as practicable but no later than January 1, 2026, if emission reductions from I/M program revisions are relied upon for attainment demonstration or RFP SIP purposes and no later than four years after the effective date of the final action reclassifying these areas as Serious for the 2015 ozone NAAQS if emission reductions from I/M program revisions are not relied upon for attainment demonstration or RFP SIP purposes. We are also finalizing a deadline for any new or revised Enhanced I/M programs in the San Antonio and DFW areas to be fully implemented as expeditiously as practicable but no later than March 1, 2026, if emission reductions from I/M program revisions are relied upon for attainment demonstration or RFP SIP purposes and no later than four years after the effective date of the final action reclassifying these areas as Serious for the 2015 ozone NAAQS if emission reductions from I/M program revisions are not relied upon for attainment demonstration or RFP SIP purposes. We are also finalizing a deadline for the first transportation control demonstration, as required by CAA section 182(c)(5), of no later than January 1, 2028, and for subsequent transportation control demonstrations every 3 years thereafter.

### IV. Environmental Justice Considerations

As stated in our January 2024 proposal and for informational purposes only, EPA conducted screening analyses of the San Antonio, DFW, and HGB areas using EPA's Environmental Justice (EJ) screening tool (EJScreen tool, version 2.2).[54] The results of this analysis are provided for informational and transparency purposes, not as a basis of our proposed action. The EJScreen analysis reports are available in the docket for this rulemaking. The EPA found, based on the EJScreen analyses, that this final action will not have disproportionately high or adverse human health or environmental effects on a particular group of people, because EPA's granting of the Texas Governor's request to reclassify the San Antonio, DFW, and HGB ozone nonattainment areas from Moderate to Serious will require ongoing reductions of ozone precursor emissions, as required by the CAA. Specifically, this final rule would require that Texas submit plans for each area including: Enhanced monitoring (CAA section 182(c)(1)); Emissions inventory and emissions statement rule (40 CFR 51.1300(p) and 40 CFR 51.1315); RFP (40 CFR 51.1310); Attainment demonstration and RACM (40 CFR 51.1308 and 40 CFR 51.1312(c)); RACT (40 CFR 51.1312); Nonattainment NSR (40 CFR 51.1314 and 40 CFR 51.165); Enhanced I/M (CAA section 182(c)(3) and 40 CFR 51 Subpart S); Clean-fuel vehicle programs (CAA section 182(c)(4); Contingency measures (CAA sections 172(c)(9) and 182(c)(9)); and a demonstration evaluating the need for a transportation control measure program (CAA section 182(c)(5)). These required measures would help to improve air quality in the affected nonattainment areas. Information on ozone and its relationship to negative health impacts can be found at *https://www.epa.gov/ground-level-ozone-pollution.*

### V. Statutory and Executive Order Reviews

*A. Executive Order 12866: Regulatory Planning and Review, Executive Order 13563: Improving Regulation and Regulatory Review, and Executive Order 14094: Modernizing Regulatory Review*

This final action is not a significant regulatory action as defined in Executive Order 12866, as amended by Executive Order 14094, and was therefore not subject to a requirement for Executive Order 12866 review. Because the statutory requirements are clearly defined with respect to the differently classified areas, and because those requirements are automatically triggered by reclassification, the timing of the submittal of the Serious area

---

[54] See *https://www.epa.gov/ejscreen.*

requirements does not impose a materially adverse impact under Executive Order 12866.

*B. Paperwork Reduction Act (PRA)*

This final action does not impose an information collection burden under the provisions of the PRA.

*C. Regulatory Flexibility Act (RFA)*

I certify that this final rule will not have a significant economic impact on a substantial number of small entities under the RFA. This final action will not impose any requirements on small entities. Granting a request to reclassify an area to the next higher classification does not in and of itself create any new requirements beyond what is mandated by the CAA. Instead, this rulemaking only makes factual conclusions, and does not directly regulate any entities.

*D. Unfunded Mandates Reform Act of 1995 (UMRA)*

This final action does not contain an unfunded mandate of $100 million or more as described in UMRA, 2 U.S.C. 1531–1538, and does not significantly or uniquely affect small governments. The final action imposes no new enforceable duty on any State, local or Tribal governments or the private sector.

*E. Executive Order 13132: Federalism*

This final action does not have federalism implications. It will not have substantial direct effects on the States, on the relationship between the National Government and the States, or on the distribution of power and responsibilities among the various levels of government.

*F. Executive Order 13175: Consultation and Coordination With Indian Tribal Governments*

This final action does not have Tribal implications as specified in Executive Order 13175. There are no Indian reservation lands or other areas where the EPA or an Indian tribe has demonstrated that a tribe has jurisdiction within the San Antonio, DFW, or HGB ozone nonattainment areas. Therefore, this final action does not have tribal implications and will not impose substantial direct costs on tribal governments or preempt tribal law as specified by Executive Order 13175.

*G. Executive Order 13045: Protection of Children From Environmental Health Risks and Safety Risks*

The EPA interprets Executive Order 13045 as applying only to those regulatory actions that concern health or safety risks that the EPA has reason to believe may disproportionately affect children, per the definition of "covered regulatory action" in section 2–202 of the Executive Order. This action is not subject to Executive Order 13045 because it does not establish an environmental standard intended to mitigate health or safety risks.

*H. Executive Order 13211: Actions That Significantly Affect Energy Supply, Distribution or Use*

This final action is not subject to Executive Order 13211 because it is not a significant regulatory action under Executive Order 12866.

*I. National Technology Transfer and Advancement Act (NTTAA)*

This final action does not involve technical standards.

*J. Executive Order 12898: Federal Actions To Address Environmental Justice in Minority Populations and Low-Income Populations and Low-Income Populations and Executive Order 14096: Revitalizing Our Nation's Commitment to Environmental Justice for All*

Executive Order 12898 (Federal Actions to Address Environmental Justice in Minority Populations and Low-Income Populations, 59 FR 7629, February 16, 1994) directs Federal agencies to identify and address "disproportionately high and adverse human health or environmental effects" of their actions on minority populations and low-income populations to the greatest extent practicable and permitted by law. The EPA defines environmental justice (EJ) as "the fair treatment and meaningful involvement of all people regardless of race, color, national origin, or income with respect to the development, implementation, and enforcement of environmental laws, regulations, and policies." The EPA further defines the term fair treatment to mean that "no group of people should bear a disproportionate burden of environmental harms and risks, including those resulting from the negative environmental consequences of industrial, governmental, and commercial operations or programs and policies."

This final action would reclassify the San Antonio, DFW, and HGB nonattainment areas from Moderate to Serious for the 2015 ozone NAAQS, set deadlines for the submission of revised SIPs addressing the Serious area requirements for these three nonattainment areas, and set deadlines for implementation of controls required for these three nonattainment areas. This final does not revise measures in the current SIP. As such, at a minimum, this action would not worsen any existing air quality and is expected to ensure the areas are meeting requirements to attain and/or maintain air quality standards. Further, there is no information in the record indicating this action is expected to have disproportionately high or adverse human health or environmental effects on a particular group of people. The EPA performed an environmental justice analysis, as described earlier in this action under "Environmental Justice Considerations." The analysis was done for the purpose of providing additional context and information about this action to the public, not as a basis of the action.

*K. Congressional Review Act (CRA)*

This final rule is exempt from the CRA because it is a rule of particular applicability. The rule makes factual determinations for specific entities and does not directly regulate any entities. The EPA's approval to grant the request to reclassify does not in itself create any new requirements beyond what is mandated by the CAA.

*L. Judicial Review*

Under section 307(b)(1) of the Clean Air Act, petitions for judicial review of this action must be filed in the United States Court of Appeals for the appropriate circuit by August 19, 2024. Filing a petition for reconsideration by the Administrator of this final rule does not affect the finality of this action for the purposes of judicial review nor does it extend the time within which a petition for judicial review may be filed and shall not postpone the effectiveness of such rule or action. This action may not be challenged later in proceedings to enforce its requirements. (See section 307(b)(2).)

**List of Subjects in 40 CFR Part 81**

Environmental protection, Air pollution control, Intergovernmental relations, Nitrogen oxides, Ozone, Reporting and recordkeeping requirements, Volatile organic compounds.

Dated: June 10, 2024.

**Earthea Nance,**
*Regional Administrator, Region 6.*

Part 81, chapter I, title 40 of the Code of Federal Regulations is amended as follows:

**PART 81—DESIGNATION OF AREAS FOR AIR QUALITY PLANNING PURPOSES**

■ 1. The authority citation for part 81 continues to read as follows:

**Authority:** 42 U.S.C. 7401 et seq.

**Subpart SS—Texas**

■ 2. Section 81.344 is amended in the table for "Texas—2015 8-Hour Ozone NAAQS [Primary and Secondary]" by revising the entries for "Dallas-Fort Worth, TX", "Houston-Galveston-Brazoria, TX", and "San Antonio, TX" to read as follows:

**§ 81.344  Identification of plan.**

\* \* \* \* \*

### TEXAS—2015 8-HOUR OZONE NAAQS
[Primary and secondary]

| Designated area [1] | Designation | | Classification | |
|---|---|---|---|---|
| | Date [2] | Type | Date [2] | Type |
| Dallas-Fort Worth, TX ................................................................ | | Nonattainment ...... | July 22, 2024 .... | Serious. |
|     Collin County. | | | | |
|     Dallas County. | | | | |
|     Denton County. | | | | |
|     Ellis County. | | | | |
|     Johnson County. | | | | |
|     Kaufman County. | | | | |
|     Parker County. | | | | |
|     Tarrant County. | | | | |
|     Wise County. | | | | |
| \* | \* | \* | \* | \* |
| Houston-Galveston-Brazoria, TX ................................................. | | Nonattainment ...... | July 22, 2024 .... | Serious. |
|     Brazoria County. | | | | |
|     Chambers County. | | | | |
|     Fort Bend County. | | | | |
|     Galveston County. | | | | |
|     Harris County. | | | | |
|     Montgomery County. | | | | |
| San Antonio, TX ......................................................................... | 9/24/2018 | Nonattainment ...... | July 22, 2024 .... | Serious. |
|     Bexar County. | | | | |
| \* | \* | \* | \* | \* |

[1] Includes any Indian country in each county or area, unless otherwise specified. EPA is not determining the boundaries of any area of Indian country in this table, including any area of Indian country located in the larger designation area. The inclusion of any Indian country in the designation area is not a determination that the state has regulatory authority under the Clean Air Act for such Indian country.

[2] This date is August 3, 2018, unless otherwise noted.

\* \* \* \* \*

[FR Doc. 2024–13193 Filed 6–18–24; 8:45 am]
**BILLING CODE 6560–50–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Part 180

[EPA–HQ–OPP–2024–0223; FRL–12024–01–OCSPP]

### Afidopyropen; Pesticide Tolerance for Emergency Exemption

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY:** This regulation establishes a time-limited tolerance for residues of afidopyropen, including its metabolites and degradates, in or on strawberry. This action is in response to EPA's granting of an emergency exemption under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) authorizing use of the pesticide on field-grown strawberry. This regulation establishes a maximum permissible level for residues of afidopyropen in or on strawberry. The time-limited tolerance expires on December 31, 2027.

**DATES:** This regulation is effective June 20, 2024. Objections and requests for hearings must be received on or before August 19, 2024 and must be filed in accordance with the instructions provided in 40 CFR part 178 (see also Unit I.C. of the **SUPPLEMENTARY INFORMATION**).

**ADDRESSES:** The docket for this action, identified by docket identification (ID) number EPA–HQ–OPP–2024–0223, is available at *https://www.regulations.gov* or at the Office of Pesticide Programs Regulatory Public Docket (OPP Docket) in the Environmental Protection Agency Docket Center (EPA/DC), West William Jefferson Clinton Bldg., Rm. 3334, 1301 Constitution Ave. NW, Washington, DC 20004. The Public Reading Room is open from 8:30 a.m. to 4:30 p.m., Monday through Friday, excluding legal holidays. The telephone number for the Docket Public Reading Room is (202) 566–1744. Please review the visitor instructions and additional information about the docket available at *https://www.epa.gov/dockets*.

**FOR FURTHER INFORMATION CONTACT:** Charles Smith, Registration Division (7505P), Office of Pesticide Programs, Environmental Protection Agency, 1200 Pennsylvania Ave. NW, Washington, DC 20460–0001; main telephone number: (202) 566–1030; email address: *RDFRNotices@epa.gov*.

**SUPPLEMENTARY INFORMATION:**

### I. General Information

*A. Does this action apply to me?*

You may be potentially affected by this action if you are an agricultural producer, food manufacturer, or pesticide manufacturer. The following list of North American Industrial Classification System (NAICS) codes is not intended to be exhaustive, but rather provides a guide to help readers determine whether this document applies to them. Potentially affected entities may include:

• Crop production (NAICS code 111).
• Animal production (NAICS code 112).

## Certificate of Service

On November 26, 2024, these record excerpts were served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Kateland R. Jackson
Kateland R. Jackson